**AHDOOT & WOLFSON, PC**
Tina Wolfson
twolfson@ahdootwolfson.com
1016 Palm Avenue
West Hollywood, California 90069
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SIEGAL, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>SNAPCHAT, INC.,<br><br>        Defendant. | Case No. 2:16-cv-3444<br><br>**CLASS ACTION COMPLAINT**<br><br>**1. Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.***<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff Mark Siegal, individually and on behalf of all others similarly situated, brings this Class Action Complaint for violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*, against Snapchat, Inc. ("Snapchat" or the "Defendant"), and alleges as follows based on personal knowledge as to himself, on the investigation of counsel, and on information and belief as to all other matters, and demands trial by jury:

**NATURE OF ACTION**

1.    Plaintiff brings this action for damages and other legal and equitable remedies resulting from the illegal actions of Snapchat in collecting, storing and using Plaintiff's and other similarly situated Illinois users' biometric identifiers[1] and biometric information[2] (referred to collectively at times as "biometrics") without informed written consent in violation of the BIPA.

2.    The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c).   "For example, social security numbers, when compromised, can be changed.  Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

3.    In recognition of these concerns over the security of individuals' biometrics – particularly in the City of Chicago, which was recently selected by major national corporations as a "pilot testing site[] for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias," 740 ILCS 14/5(b) – the Illinois Legislature enacted the BIPA.

4.    As alleged herein, the BIPA is the result of an expressed fundamental public policy and legislative intent in Illinois to regulate the collection of biometric

---

[1] A "biometric identifier" is any personal feature that is unique to an individual, including fingerprints, iris scans, DNA and "face geometry," among others.

[2] "Biometric information" is any information captured, converted, stored or shared based on a person's biometric identifier used to identify an individual.

information.   BIPA provides, *inter alia*, that a private entity like Snapchat may not collect, capture, purchase, receive through trade, or otherwise obtain an individual's biometrics unless it: (1) informs that person in writing that biometric identifiers or information will be collected or stored, *see id.*; (2) informs that person in writing of the specific purpose and length of term for which such biometric identifiers or biometric information is being collected, stored and used, *see id.*; (3) receives a written release from the person for the collection of his or her biometric identifiers or information, *see id.*; and (4) publishes publically available written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information, *see* 740 ILCS 14/15(a) and (b).

5.    In direct violation of each of the foregoing provisions of § 15(a) and § 15(b) of the BIPA, Snapchat is actively collecting, storing, and using the biometrics of its users without providing notice, obtaining informed written consent or publishing data retention policies.

6.    Specifically, in connection with providing its services, Snapchat has created, collected and stored tens if not hundreds of millions of "face templates" (or "face prints") – highly detailed geometric maps of the face – from millions of individuals, tens of thousands of whom, at least, reside in the State of Illinois.  Snapchat creates these templates using sophisticated facial recognition technology that extracts and analyzes data from the points and contours of users' faces when they use Snapchat's "Lenses" feature.

7.     Lenses allows users to add real-time special effects and sounds to their "snaps," images sent through the app that "vanish" within 1 to 10 seconds of receipt, and "stories," which, unlike snaps, are available for 24 hours and can be viewed repeatedly until the time limit is up.

8.     Each face template is unique to a particular individual, in the same way that a fingerprint or voiceprint uniquely identifies one and only one person.

9.     Plaintiff brings this action individually and on behalf of all others similarly situated to prevent Snapchat from further violating the privacy rights of Illinois citizens and to recover statutory damages for Snapchat's unauthorized collection, storage and use of unwitting non-users' biometrics in violation of the BIPA.

## PARTIES

10.     Plaintiff Mark Siegal is, and has been at all relevant times, a resident and citizen of Illinois.  Mr. Siegal has been a Snapchat user since at least November 2015 and has sent approximately ten (10) snaps using the Lenses feature.  He never consented, agreed or gave permission – written or otherwise – to Snapchat for the collection or storage of the biometrics identifiers or biometric information associated with his face template.  Further, Snapchat never provided him with nor did he ever sign a written release allowing Snapchat to collect or store the biometric identifiers or biometric information associated with his face template.

11.     Snapchat is a Delaware corporation with its headquarters and principal executive offices at 64 Market Street, Venice, CA 90291.  Accordingly, Snapchat is a citizen of the states of Delaware and California.

## JURISDICTION AND VENUE

12.     Subject matter jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d) ("CAFA"), because: (i) the proposed class consists of well over 100 members; (ii) the parties are minimally diverse, as members of the proposed class, including Plaintiff, are citizens of a state different from Snapchat's home states; and (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs.  There are likely tens of thousands of individuals who, while residing in Illinois, had their biometric identifiers and/or biometric information collected, stored, and/or used by Snapchat.  The estimated number of Snapchat users residing in Illinois who were impacted by Snapchat's conduct multiplied by BIPA's statutory liquidated damages figure ($5,000 for each intentional or reckless violation and $1,000 for each negligent violation) easily exceeds CAFA's $5,000,000 threshold.

13.     Snapchat is subject to specific personal jurisdiction in California because Snapchat maintains its principal place of business in California.  Snapchat maintains such minimum contacts with California to make this Court's exercise of jurisdiction proper and engages in continuous and systematic business operations within this State, including within this County.

14.     Venue is proper in this Court because Defendant maintains its principal place of business within this County, transacts substantial business within this County, and the events giving rise to this lawsuit occurred in substantial part within this County.

**FACTUAL BACKGROUND**

**I.  Biometric Technology Implicates Consumer Privacy Concerns**

15.     "Biometrics" refers to unique physical characteristics used to identify an individual.  One of the most prevalent uses of biometrics is in facial recognition technology, which works by scanning an image for human faces, extracting facial feature data based on specific "biometric identifiers" (*i.e.*, details about the face's geometry as determined by facial points and contours), and comparing the resulting "face template" (or "faceprint") against the face templates stored in a "face template database."  If a database match is found, an individual may be identified.

16.     The use of facial recognition technology in the commercial context presents numerous consumer privacy concerns.  During a 2012 hearing before the United States Senate Subcommittee on Privacy, Technology, and the Law, Senator Al Franken (D-MN) stated that "there is nothing inherently right or wrong with [facial recognition technology, but] if we do not stop and carefully consider the way we use [it], it may also be abused in ways that could threaten basic aspects of our privacy and civil liberties."[3]  Senator Franken noted, for example, that facial recognition technology could be "abused

---

[3] *What Facial Recognition Technology Means for Privacy and Civil Liberties: Hearing Before the Subcomm. on Privacy, Tech. & Law of the S. Comm. on the Judiciary*, 112th Cong. 1 (2012) (available at https://www.eff.org/files/filenode/jenniferlynch_eff-senate-testimony-face_recognition.pdf).

to not only identify protesters at political events and rallies, but to target them for selective jailing and prosecution."[4]

17.     The Federal Trade Commission ("FTC") has raised similar concerns, and recently released a "Best Practices" guide for companies using facial recognition technology.[5]   In the guide, the FTC underscores the importance of companies obtaining affirmative consent from consumers before extracting and collecting their biometric identifiers and biometric information.

18.     As explained below, Snapchat failed to obtain consent from users when it introduced facial recognition technology in connection with its services.   Not only do the actions of Snapchat contravene the FTC guidelines, they also violate the statutory privacy rights of Illinois residents.

## II. Illinois's Biometric Information Privacy Act

19.     In 2008, Illinois enacted the BIPA due to the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276.

20.     The BIPA was enacted due to the Legislature's expressed concerns over the sensitive nature of biometrics, the potential for misuse and the need for regulation.

---

[4] *Id.*
[5] *Facing Facts: Best Practices for Common Uses of Facial Recognition Technologies*, Federal Trade Commission (Oct. 2012), *available at* http://www.ftc.gov/sites/default/files/documents/reports/facing-facts-best-practices-common-uses-facial-recognition-technologies/121022facialtechrpt.pdf.

Specifically, the Legislative Intent and purpose of BIPA, as expressly found by the Illinois General Assembly is as follows:

Sec. 5. Legislative findings; intent. The General Assembly finds all of the following:

(a) The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings.

(b) Major national corporations have selected the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias.

(c) Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

(d) An overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information.

(e) Despite limited State law regulating the collection, use, safeguarding, and storage of biometrics, many members of the public are deterred from partaking in biometric identifier-facilitated transactions.

(f) The full ramifications of biometric technology are not fully known.

(g) The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

740 ILCS 14/5.

21.     The BIPA makes it unlawful for a company to, *inter alia*, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers[6] or biometric information, unless it first:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."

740 ILCS 14/15 (b).

22.     Section 15(a) of the BIPA also provides:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

23.     As alleged below, Snapchat's practices of collecting, storing and/or using users' biometric identifiers and information without informed written consent violate all three prongs of §15(b) of the BIPA.  Snapchat's failure to provide a publicly available

---

[6] The BIPA's definition of "biometric identifier" expressly includes information collected about the geometry of the face (*i.e.*, facial data obtained through facial recognition technology).  *See* 740 ILCS 14/10.

written policy regarding its schedule and guidelines for the retention and permanent destruction of non-users' biometric information also violates §15(a) of the BIPA.

### III.        Snapchat Violates The Biometric Information Privacy Act

24.    Snapchat provides image messaging and multimedia services to its users via its mobile application ("app") that allows users to share images or video clips with other users.  To use Snapchat, users download and install a copy of the Snapchat app on their mobile devices and then are able to use Snapchat's services through the app.

25.    In September 2015, Snapchat acquired Looksery, Inc., a San-Francisco-based company and developer of the Looksery application, which uses facial recognition, tracking and modification technologies for transforming a user's face in real time for use in video chats and messages.  That same month, Snapchat released Looksery's facial recognition and modification technology under the name "Lenses," which became a feature of Snapchat's services.

26.    Looksery[7] describes this technology as follows:

> Our technology tracks your facial shape and expressions, ultimately giving you the ability to incrementally modify and fully transform your look using a smartphone front and rear- facing and cameras. All in real-time. A wide range of face filters have been developed that can modify your eye color, nose size, facial shape, and skin. Plus fun real-time effects that transform you into a 3D avatar of a cute animal or even a scary monster if desired. With our technology, the possibilities are extraordinary.

---

[7] http://www.looksery.com/pr/ (last visited May 17, 2016).

27.     When Snapchat launched Lenses in connection with Snapchat's services, Looksery was withdrawn as a stand-alone product.

28.     Snapchat tells users that they can make snaps "even more fun by adding real-time special effects and sounds with Lenses!"[8]

29.     To use this feature of Snapchat's services, users must:

1.     Go to the Camera screen in Snapchat.
2.     Press and hold on a face! Lens options will appear below.
3.     Swipe left to select the Lens you want to use.
4.     Follow any action prompts that appear, like 'Raise Your Eyebrows.'
5.     Tap the capture button to take a Snap, or press and hold on the capture button to record a video.

30.     Through Lenses, users can add animation and other effects to their snaps and stories:



---

[8] https://support.snapchat.com/en-US/ca/lenses (last visited May 13, 2016).



31.    In order to create these animations, Snapchat employs its proprietary facial recognition technology to create a face scan or face template of the user:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



COMPLAINT





32.   In direct violation of § 15(b)(1) of the BIPA, Snapchat's proprietary facial recognition technology scans a user's face each time he or she uses Lenses to send a snap or story and collects, stores and uses, geometric data relating to the unique points and contours (*i.e.,* biometric identifiers) of each face.

33.     In direct violation of § 15(b)(2) and 15(b)(3) of the BIPA, Snapchat never informed Illinois users, such as Plaintiff, of the specific purpose and length of term for which their biometric identifiers or information would be collected, stored and used, nor did Snapchat obtain a written consent or release from any of these users.

34.     Also in direct violation of § 15(a) of the BIPA, Snapchat does not have written, publicly available policies identifying its retention schedules or guidelines for permanently destroying users' biometric identifiers or information.

35.     Critically, while snaps are typically accessible to users for anywhere from 1 to 10 seconds, and stories are accessible to users for 24 hours, this does *not* mean that images sent through Snapchat, and the information contained therein, "vanish" within that timeframe.

36.     In fact, Snapchat specifically advises users that:

> Snapchat lets you capture what it's like to live in the moment. On our end, that means that we automatically delete the content of your Snaps (the photo and video messages that you send your friends) from our servers after we detect that a Snap has been opened or has expired. But remember: There are various ways Snapchatters can save your content and also upload it to Snapchat (like as an attachment in Chat). We go into more detail below about how users can save Snapchat content.

> Outside of Snaps, the rest of our services may use content for longer periods of time, which means those services may follow different deletion protocols. So, for example, we retain your Story content a bit longer than Snaps so that your friends have more time to view your Story. ***Or, if you submit content to one of our inherently public features, such as Live, Local, or any other crowd-sourced service, we may retain the content***

*indefinitely*. If you have any questions about how a feature works you can just pop on over to our Support Site.

Finally—and this is important—you should understand that users who see the content you provide can always save it using any number of techniques: screenshots, in-app functionality, or any other image-capture technology. It's also possible, as with any digital information, that someone might be able to access messages forensically or find them in a device's temporary storage. ***Keep in mind that, while our systems are designed to carry out our deletion practices automatically, we cannot promise that deletion will occur within a specific timeframe. And we may also retain certain information in backup for a limited period of time or as required by law.*** [9]

37.      Moreover, in May of 2013, the Federal Trade Commission filed a

Complaint against Snapchat alleging "deceptive business practices," claiming, *inter alia*,

that Snapchat:

- Stored video snaps unencrypted on the recipient's device in a location outside the app's "sandbox," meaning that the videos remained accessible to recipients who simply connected their device to a computer and accessed the video messages through the device's file directory; and

- Deceptively told its users that the sender would be notified if a recipient took a screenshot of a snap when, in fact, any recipient with an Apple device that had an operating system pre-dating iOS 7 could use a simple method to evade the app's screenshot detection, and the app will not notify the sender. [10]

---

[9] https://www.snapchat.com/privacy (last visited May 13, 2016) (emphases added).

[10] https://www.ftc.gov/news-events/press-releases/2014/05/snapchat-settles-ftc-charges-promises-disappearing-messages-were (last visited May 13, 2016).  The FTC and Snapchat ultimately settled the dispute.

38. In its "Law Enforcement Guide" published in October 2015, Snapchat further represents that it may, under certain circumstances, have the ability to provide the "content of sent messages" to U.S. governmental and law enforcement agencies, noting that if a snap remains unopened by the recipient it will be stored on Snapchat's servers for 30 days before it is deleted.[11]

39. And, according to Snapchat's current Privacy Policy, it collects a wealth of information from its users including, *inter alia*, "information about the content you provide . . . and the metadata that is provided with the content" as well as "images and other information from your device's camera and photos." Snapchat has been collecting, capturing and storing such user information for years.[12]

40. Accordingly, Snapchat is collecting, capturing, storing, and/or using its users' biometric identifiers and/or biometric information in direct violation of the BIPA.

## CLASS ALLEGATIONS

41. **Class Definition**: Plaintiff brings this action pursuant to California Code of Civil Procedure § 382 on behalf of a class of similarly situated individuals, defined as follows (the "Class"):

---

[11] https://www.snapchat.com/static_files/lawenforcement.pdf (last visited May 17, 2016).

[12] https://web.archive.org/web/20130322041747/http://www.snapchat.com/privacy (Privacy Policy dated February 20, 2013) ("Snapchat collects the following information about its users: . . . uploaded videos and images . . . . When you send or receive messages using the Snapchat services, we temporarily process and store your images and videos in order to provide our services. Although we attempt to delete image data as soon as possible after the message is received and opened by the recipient (and after a certain period of time if they don't open the message), we cannot guarantee that the message contents will be deleted in every case").

> All Snapchat users who, while citizens of the State of Illinois, had their biometric identifiers or biometric information, including "face templates" (or "face prints"), collected, captured, purchased, received through trade, or otherwise obtained by Snapchat.

The following are excluded from the Class: (1) any Judge presiding over this action and members of his or her family; (2) Snapchat, Snapchat's subsidiaries, parents, successors, predecessors, and any entity in which Snapchat or its parent has a controlling interest (as well as current or former employees, officers and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Snapchat's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

42. **Numerosity**: The number of persons within the Class is substantial and is believed to amount to thousands of people. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

43. **Commonality and Predominance**: There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which

may be determined without reference to the individual circumstances of any class member include, but are not limited to, the following:

(a)     whether Snapchat collected or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

(b)     whether Snapchat properly informed Plaintiff and the Class that it collected, used, and stored their biometric identifiers or biometric information;

(c)     whether Snapchat obtained a written release (as defined in 740 ILCS 1410) to collect, use, and store Plaintiff's and the Class's biometrics identifiers or biometric information;

(d)     whether Snapchat developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometrics information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of their last interaction, whichever occurs first;

(e)     whether Snapchat's violations of the BIPA were committed intentionally, recklessly, or negligently.

44.     **Adequate Representation**: Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation.  Plaintiff and his counsel are committed to vigorously prosecuting this class action.  Neither Plaintiff nor his counsel has any interest adverse to, or in conflict with, the interests of the absent members of the Class.  Plaintiff is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims.  If necessary, Plaintiff may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Class or additional claims as may be appropriate.

45.   **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable.  Even if every member of the Class could afford to pursue individual litigation, the Court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the BIPA.

**CAUSE OF ACTION**
**Violation of 740 ILCS 14/1, *et seq.***
**(On Behalf of Plaintiff and the Class)**

46.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

47.   The BIPA makes it unlawful for any private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and

length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . .   740 ILCS 14/15(b) (emphasis added).

48.   Snapchat is a "private entity" under the BIPA.  *See* 740 ILCS 14/10.

49.   Plaintiff and the Class members are individuals who had their "biometric identifiers" (in the form of their facial geometries) collected, captured, purchased, received through trade, or otherwise obtained by Snapchat in the course of providing facial recognition technology in connection its services.  *See* 740 ILCS 14/10.

50.   Plaintiff and the Class members are individuals who had their "biometric information" collected by Snapchat in the course of providing its services, through Snapchat's collection of their "biometric identifiers."

51.   Snapchat systematically and automatically collected, captured, purchased, received through trade, or otherwise obtained Plaintiff's and the Class members' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

52.   Snapchat failed to properly inform Plaintiff or the class in writing that their biometric identifiers and/or biometric information was being collected, captured, purchased, received through trade, or otherwise obtained. Nor did Snapchat inform Plaintiff and the Class members in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information was being collected,

captured, purchased, received through trade, or otherwise obtained, as required by 740 ILCS 14/15(b)(1)-(2).

53.     In addition, Snapchat does not publicly provide a retention schedule or guidelines for permanently destroying the biometric identifiers and/or biometric information of Plaintiff or the Class members, as required by the BIPA.  *See* 740 ILCS 14/15(a).

54.     By collecting, capturing, purchasing, receiving through trade, or otherwise obtaining Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Snapchat violated the right of Plaintiff and each Class member to keep private these biometric identifiers and biometric information, as set forth in the BIPA, 740 ILCS 14/1, *et seq.*

55.     On behalf of himself and the proposed Class members, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Snapchat to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) statutory damages of $5,000 for the intentional and reckless violation of the BIPA pursuant to 740 ILCS 14/20 (2), or alternatively, statutory damages of $1,000 pursuant to 740 ILCS 14/20(1) if the Court finds that Snapchat's violations were negligent; and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mark Siegal, on behalf of himself and the proposed Class, respectfully requests that this Court enter an Order:

A.   Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing his counsel as Class Counsel;

B.   Declaring that Snapchat's actions, as set out above, violate the BIPA, 740 ILCS l4/1, *et seq.*;

C.   Awarding statutory damages of $5,000 for each and every intentional and reckless violation of the BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000 pursuant to 740 ILCS 14/20(1) if the Court finds that Snapchat's violations were negligent;

D.   Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an order requiring Snapchat to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

E.   Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.   Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G.   Awarding such other and further relief as equity and justice may require.

# JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 18, 2016                          **AHDOOT & WOLFSON, PC**


*/s/ Tina Wolfson*
Tina Wolfson
twolfson@ahdootwolfson.com
1016 Palm Avenue
West Hollywood, California 90069
Telephone: (310) 474-9111
Facsimile: (310) 474-8585


***ATTORNEYS FOR PLAINTIFF***